IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

FREDRICK M. FIEDLER                                                                                   PLAINTIFF

       v.                    Civil No. 3:12-cv-03010-JRM

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                                                        DEFENDANT

## MEMORANDUM OPINION

### I.    Factual and Procedural Background

Plaintiff, Fredrick M. Fiedler, brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act ("the Act").

Plaintiff protectively filed his application on March 24, 2010, alleging disability as of April 29, 2009, due to right shoulder osteoarthritis, back pain, cognitive disorder, pain disorder, anxiety, and depression. Tr. 11, 13, 164. On the alleged onset date, Plaintiff was fifty-eight years old, which is defined as an individual of advanced age, with at least a high school education. 20 C.F.R. § 404.1563. He has past work as a cabinet and counter top maker. Tr. 149-156, 166, 223.

Plaintiff's DIB application was denied at the initial and reconsideration levels. Tr. 74-76, 78-79. At Plaintiff's request, an administrative hearing was held on March 17, 2011. Tr. 33-71. The ALJ rendered an unfavorable decision on April 4, 2011, finding Plaintiff was not disabled under the Act. Tr. 8-19. Subsequently, the Appeals Council denied Plaintiff's Request for Review on December 5, 2011, thus making the ALJ's decision the final decision of the Commissioner. Tr. 1-6.

Plaintiff now seeks judicial review of that decision.

## II.     Applicable Law

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that he is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits his physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform his past relevant work; and (5) if the

claimant cannot perform his past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given his age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

### III. ALJ's Determination

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity at any point from April 29, 2009, the alleged onset date. Tr. 13. At step two, the ALJ found Plaintiff suffers from the following severe impairment: right shoulder osteoarthritis status post arthroscopic rotator cuff repair. Tr. 12. At step three, he determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 13-14.

At step four, the ALJ found Plaintiff had the RFC to perform medium work,[1] except he could only occasionally reach overhead with his non-dominant arm and no more than frequently climb, balance, crawl, kneel, stoop, and crouch. Tr. 14-17. Furthermore, due to pain, the ALJ found Plaintiff is limited to work in which interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote, with few variables and little judgment required, and the supervision required is direct and concrete. Tr. 14-17.

With these limitations, the ALJ found Plaintiff could not perform any of his past relevant work. Tr. 17. However, after consulting a vocational expert, the ALJ found jobs existing in

---

[1] Medium work involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objects weighing up to twenty-five pounds. *See* 20 C.F.R. § 404.1567(c).

significant numbers in the national economy that Plaintiff could perform.[2]  Accordingly, the ALJ determined Plaintiff was not under a disability from April 29, 2009, the alleged onset date, through April 4, 2011, the date of the administrative decision.  Tr. 18-19.

IV.   **Discussion**

On appeal, Plaintiff contends the ALJ erred by: (A) improperly discounting his credibility; (B) ignoring the weight of the evidence concerning Plaintiff's RFC; and (C) dismissing the findings of Vann Smith, Ph.D., a neuropsychologist, and determining that Plaintiff's alleged cognitive disorder was not a medically determinable impairment.  *See* Pl.'s Br. 10-18.  The Commissioner contends that substantial evidence supports the ALJ's determination.  *See* Def.'s Br. 4-18.  For the following reasons, the court finds that substantial evidence supports the ALJ's determination.

A.  Credibility

When evaluating a claimant's subjective allegations, the ALJ must consider all evidence relating to: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) any precipitating and aggravating factors; (4) the dosage, effectiveness and side effects of medication; and (5) any functional restrictions.  *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  The ALJ "may not discount a claimant's allegations of disabling pain solely because the objective medical evidence does not fully support them."  *Medhaug v. Astrue*, 578 F.3d 805, 816 (8th Cir. 2009) (quoting *Goff*, 421 F.3d at 792).  However, subjective complaints may be discounted if there are inconsistencies in the medical evidence as a whole.  *Id.*  A court "will not disturb the

---

[2] The ALJ determined Plaintiff could perform the requirements of representative medium, unskilled occupations such as dishwasher/kitchen helper, of which there are 1,400 jobs in Arkansas and 212,500 jobs nationally, hospital cleaner, of which there are 1,400 jobs in Arkansas and 149,100 jobs nationally, and warehouse laborer, of which there are 900 jobs in Arkansas and 33,000 jobs nationally.  Tr. 18.

decision of an ALJ who considers, but for good cause expressly discredits, a claimant's complaints of disabling pain." *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) (quoting *Goff*, 421 F.3d at 792).

It is well-settled that an ALJ need not explicitly discuss each *Polaski* factor; it is "sufficient if he acknowledges and considers those factors before discounting a claimant's subjective complaints." *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004)). Contrary to Plaintiff's assertion, the ALJ properly considered his subjective complaints and dismissed them for legally sufficient reasons.

With regard to activities of daily living, Plaintiff testified that he could lift and carry a forty pound bag of dog food, mow his lawn for an hour at a time, stand "maybe" five hours continuously, and perform household chores. Tr. 16, 56, 59. In April and June 2010, Plaintiff reported that he could takes his dogs for a run, feed and water his dogs, bathe his dogs, clean his kitchen, do laundry, sweep, mow, drive independently, shop for groceries several times per week, water plants, work in his garden, and perform landscaping. Tr. 16, 141-148, 184-191; *Halverson v. Astrue*, 600 F.3d 922, 928 (8th Cir. 2010) (claimant's allegations of employment-related difficulties were inconsistent with her ability to travel, visit friends, go shopping, and care for her activities of daily living).

The ALJ also took judicial notice of the fact that Plaintiff received unemployment benefits during his alleged period of disability. Tr. 16. A claimant must "hold himself out as available, willing and able to work" in order to receive unemployment benefits. *Johnson v. Chater,* 108 F.3d 178, 180-81 (8th Cir. 1997) (quoting *Jernigan v. Sullivan,* 948 F.2d 1070, 1074 (8th Cir. 1991)). "Applying for unemployment benefits 'may be some evidence, though not conclusive, to negate' a claim of disability." *Id.* Receipt of unemployment benefits is facially inconsistent with a claim of

disability. As such, the ALJ did not err by taking into consideration Plaintiff's receipt of unemployment benefits in his credibility analysis.

Finally, the ALJ found that Plaintiff's subjective complaints were simply inconsistent with the objective evidence in the record, which showed improvement following Plaintiff's surgical interventions and physical therapy. Tr. 15-16. *Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (absence of objective medical evidence to support claimant's complaints).

Here, the ALJ cited the proper standard, considered the factors in conjunction with Plaintiff's testimony, and then properly discounted Plaintiff's subjective complaints. *See Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) ("we defer to an ALJ's credibility determinations if they are supported by valid reasons and substantial evidence"). For these reasons, substantial evidence supports the ALJ's credibility analysis.

B. RFC Determination

At the fourth step of the evaluation, a disability claimant has the burden of establishing his RFC. *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). A claimant's RFC is the most he can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Masterson*, 363 F.3d at 737. The Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be "some medical evidence" to support the ALJ's determination. *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir 2000).

On August 26, 2009, Dr. Knox performed an arthroscopic surgery to repair a rotator cuff tear in Plaintiff's right shoulder. Tr. 15, 281-282. On December 1, 2009, Dr. Knox released Plaintiff to return to work with the following restrictions: lifting up to twenty pounds with no overhead work. Tr. 430. On December 29, 2009, Dr. Knox noted Plaintiff was having some soreness in his right shoulder and strength was still an issue. Tr. 430. Dr. Knox also noted that he did not believe Plaintiff could return to his prior work, which involved lifting up to 150 pounds. Tr. 430.

On January 7, 2010, Dr. Knox instructed Plaintiff to continue with his lifting and overhead restrictions until his next appointment on January 26, 2010, noting that Plaintiff was not working because his current employer was unable to accommodate these restrictions. Tr. 430. On February 9, 2010, after reviewing the results of a right shoulder arthrogram and MRI, Dr. Knox concluded that Plaintiff had a re-tear of his rotator cuff and recommended a "right shoulder scope with rotator cuff repair," which he performed on March 10, 2010. Tr. 15, 252-253, 288-290, 424.

On March 17, 2010, Plaintiff stated he was doing well and had mild to moderate pain, depending on his activity level. Tr. 290. On March 30, 2010, Plaintiff stated he was "feeling good." Tr. 291. Dr. Knox noted that Plaintiff's motion looked excellent and recommended a physical therapy strengthening program. Tr. 291.

On March 18, 2010, Melissa Smyth, an occupational therapist, saw Plaintiff upon Dr. Knox's referral. Tr. 357-358. Treatment goals included improving Plaintiff's active range of motion, strength, and ability to return to work. Tr. 357. On April 12, 2010, Ms. Smyth noted that Plaintiff's progress was "very good," with no special problems. Tr. 360. On April 26, 2010, Ms. Smyth noted that Plaintiff had met all his range of motion goals and his strength was improved in all planes. Tr. 364.

On April 27, 2010, Dr. Knox noted that Plaintiff had been through physical therapy and his motion in his shoulder looked good. Tr. 375. Dr. Knox discontinued Plaintiff's physical therapy, recommended a home exercise program, and noted he would try to get Plaintiff back to work in one month, although he did not feel Plaintiff could return to his previous employment, as it was simply too stressful. Tr. 375.

On May 25, 2010, Dr. Knox determined Plaintiff had reached maximum medical improvement and referred him to an occupational therapist for an impairment rating. Tr. 376. On June 2, 2010, Ms. Smyth evaluated Plaintiff and assessed him with a 14% impairment of the right upper extremity and an 8% impairment of the whole body. Tr. 383. There is no medical evidence that Plaintiff sought further medical treatment for his shoulder after this date.

After considering the evidence of record, including the medical records, opinion evidence, and Plaintiff's own statements as to his limitations, the undersigned finds that substantial evidence supports the ALJ's RFC determination. The medical evidence of record demonstrates that Plaintiff's right shoulder significantly improved with surgical intervention and physical therapy. *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (an impairment that can be controlled by treatment or medication is not considered disabling). Dr. Knox found that Plaintiff reached maximum medical improvement as of May 25, 2010. Tr. 376. At this point, he had good range of motion and had completed all his physical therapy goals. Tr. 364, 376. Although Dr. Knox had previously placed restrictions on Plaintiff's ability to lift and perform overhead work, there is no evidence that these restrictions were more than temporary in nature. Moreover, although Dr. Knox expressed doubt as to whether Plaintiff could perform his previous work, which required lifting objects weighing up to 150 pounds, he was adamant in his opinion that Plaintiff could return to the work force. Tr. 375.

This conclusion is bolstered by the fact that Plaintiff sought no additional treatment for his right shoulder after June 2, 2010.  Finally, as previously discussed, Plaintiff's extensive daily activities are inconsistent with his allegation of total disability.  For these reasons, the undersigned finds that substantial evidence supports the ALJ's RFC determination.

      C.  Cognitive Disorder

Plaintiff was referred to Dr. Smith by his attorney for a neuropsychological evaluation, which took place on September 15, 2010.  Tr. 387-395.  Dr. Smith diagnosed Plaintiff with cognitive disorder of moderate severity, non-psychotic, secondary to general medical condition(s), and estimated his Global Assessment of Functioning ("GAF") score at 35.  Tr. 390-391.  Dr. Smith concluded that Plaintiff was disabled.  Tr. 390.

Substantial evidence supports the ALJ's determination that Dr. Smith's opinion was entitled to no weight.  First, Dr. Smith evaluated Plaintiff on one occasion.  The assessment of a doctor who evaluates a claimant once or not at all does not usually constitute substantial evidence.  *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999).  Additionally, the ALJ noted that Dr. Smith relied at least partly on Plaintiff's reported medical history of multiple traumatic brain injuries and degenerative disc disease, which were not documented in the medical evidence of record.  Tr. 17.  Plaintiff had never before sought treatment for a mental impairment, and there was no documented evidence of brain atrophy in the record.  Tr. 17.  Finally, Plaintiff did not allege cognitive dysfunction in his disability report, nor did he seek treatment from a neuropsychologist prior to his consultation with Dr. Smith.  *See Page v. Astrue,* 484 F.3d 1040, 1043 -44 (8th Cir. 2007) (doctors visit linked primarily to obtaining benefits rather than medical treatment).  For these reasons, the undersigned finds that substantial evidence supports the ALJ's dismissal of Dr. Smith's findings and diagnosis.

## V. Conclusion

Having carefully reviewed the record, the undersigned finds that substantial evidence supports the ALJ's determinations at each step of the disability evaluation process, and thus the decision should be affirmed. Accordingly, Plaintiff's complaint should be dismissed with prejudice.

IT IS SO ORDERED this 10th day of April 2013.

/s/ *J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE